UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH A. LANCI, | ) | |
| | ) | Case No. 1:08-CV-1575 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| MEDICAL MUTUAL OF OHIO, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

Let it never be said that the parties in this case were unwilling to stand on principle.

Before the Court are cross-motions for summary judgment: Plaintiff Kenneth A. Lanci's ("Lanci") Motion for Summary Judgment [dkt. 32] and Defendant Medical Mutual of Ohio's ("MMO") Motion for Judgment on the Administrative Record, or in the Alternative, Motion for Summary Judgment [dkt. 33].[1]

For the following reason the Court **GRANTS** Lanci's Motion for Summary Judgment and **DENIES** MMO's Motion for Judgment on the Administrative Record, or in the Alternative, Motion for Summary Judgment, and dismisses the case.

I. BACKGROUND AND PROCEDURAL HISTORY

The facts are described in a Report and Recommendation prepared by Magistrate Judge Greg White in connection with MMO's Motion to Dismiss Lanci's First Amended Complaint. [dkt. 16, at 1-

---

[1] Also pending is MMO's *Motion to Strike the Affidavit of Kenneth A. Lanci Attached to Plaintiff's Motion for Summary Judgment* [dkt. 35]. This procedural motion is intertwined with the dispositive motions. MMO's motion is **DENIED AS MOOT** as the affidavit is not relied upon by this Court in rendering its decision.

3]. In ruling on that motion, this Court adopted Judge White's description of the facts when ruling on MMO's motion, as neither party objected to Judge White's summary [dkt. 19, at 2]. These remain the uncontested material facts of the case:

> Plaintiff Lanci is a beneficiary of a group health insurance plan ("the Plan") administered by MMO and governed by the Employee Retirement Income Security Act ("ERISA"). Lanci alleges that, after complaining of chest pains, his treating physician referred him for a "coronary CTA procedure" ("the Procedure") in early July of 2007. Before having the coronary CTA procedure, Lanci contacted MMO to determine whether it was covered by the Plan. MMO informed Lanci that the Procedure was not covered under the Plan because MMO considered it "investigational." Subsequently, on July 19, 2007, Lanci suffered a massive heart attack. On July 23, 2007, MMO officially notified Lanci, in writing, that the cost of the coronary CTA procedure was not reimbursable under the terms of the Plan. Lanci followed the process described in MMO's notification letter and attempted to appeal MMO's decision. As part of the appeal process, he asked to review the evidence MMO relied upon to conclude that the Procedure was "investigational." MMO did not respond to his request for appeal, or his request to obtain access to the information related to MMO's coverage determination.

[dkt. 19, at 2].

MMO never processed an appeal of Lacni's claim. Lanci then filed this action.

This action was removed to this Court on June 30, 2008 [dkt. 1]. Lanci later filed an Amended Complaint on August 6, 2008, which is the now operative complaint [dkt. 6]. In his Amended Complaint, filed pursuant to the Employee Retirement Income Security Act ("ERISA"), Lanci sought to enforce his rights under a group health insurance plan ("the Plan") administered by MMO. Specifically, he sought benefits under the Plan and to enforce his rights to an appropriate review of his request for benefits under the Plan under 29 U.S.C. § 1132(a)(1), and asked for equitable relief under § 1132(a)(3)(B). A Motion to Dismiss Plaintiff's First Amended Complaint quickly followed [dkt. 7].

As noted above, this Court referred the Motion to Dismiss to Judge White. Judge White found that, though Lanci could not seek compensatory damages, his request for equitable relief, particularly his request for access to documentation relevant to MMO's decision to deny coverage and for a final determination of his appeal of alleged valid and viable claims under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3). While Lanci did not object to Judge White's conclusions regarding his request for compensatory damages, MMO objected to Judge White's conclusion that Lanci's equitable claims, and those seeking to enforce his right to appeal under the Plan should not be dismissed [dkt. 17]. Undeterred by the fact that his request for monetary damages had been stripped from the case, Lanci strenuously opposed MMO's objections to the R&R [dkt. 18]. This Court reviewed the R&R, the objections and the opposition thereto, and concluded that Judge White's conclusions were correct in most respects.[2] Specifically, this Court found that Lanci asserted viable claims to enforce his benefits under the Plan under 29 U.S.C. § 1132(a)(1)(B). Specifically, Lanci sought to enforce his right to an appeal following a denial of coverage and his right to information related to the denial of coverage determination [dkt. 19, at 11]. The Court also found that Lanci asserted claims for injunctive relief pursuant to § 1132(a)(3) to compel MMO to respond to Lanci's request for an appeal and documentation to which he claimed to be entitled under the Plan. *Id*. at 13.

Importantly, in reaching this conclusion, the Court rejected MMO's contention that the fact of Lanci's heart attack mooted Lanci's right to an appeal or documentation under the Plan, finding that nothing in the Plan conditioned Lanci's right to an appeal and to information regarding his coverage

---

[2] Judge White also concluded that the Court should find that Lanci's complaint could be read to seek a clarification of his right to future benefits under the Plan, should he ever desire to have the coronary CTA procedure for management of his heart condition. This Court, however, found that Lanci had not adequately asserted such a claim and, thus, disagreed with Judge White on that one point.

decision on the continuing need for the procedure.[3]

Recognizing that its decision on MMO's Motion to Dismiss removed any request for monetary damages from the case and that the appeal process MMO would need to undertake to answer Lanci's request for relief was not burdensome, the Court assumed the parties would thereafter resolve their disputes, with MMO processing the appeal and providing the requested documentation. The Court was wrong.

Rather than process Lanci's appeal, MMO informed the Court of its intention to pursue its defense of Lanci's claims and, at the Case Management Conference, Lanci informed the Court of his desire to enforce his rights under the Plan, regardless of his inability to receive compensatory damages for any violation of those rights.

After both fact and expert discovery, the pending cross-motions followed. Despite MMO's attempt to complicate these issues or to reargue issues already decided by this Court, the question presented is straightforward.

## II.    CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). The

---

[3] If it did, plan administrators could regularly deny appeals regarding requests for coverage of diagnostic or preventative medical procedures without recourse, because the need for many such procedures would regularly be mooted by the natural progression of the medical condition.

-4-

moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e)(2):

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. . . .

Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324. In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted). Furthermore, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87.

In determining whether a genuine issue of material fact exists, this Court must view all of the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227

F.3d 706, 710 (6th Cir. 2000).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248.  An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252.

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party.  *Id.* ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict – whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.") (emphasis in original) (internal quotations omitted).

In addition, the standard of review applicable to cross-motions for summary judgment does not differ from the standard applied when reviewing a Fed.R.Civ.P. 56(c) motion filed by only one party. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991).  "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. (internal citations and quotations omitted).

**B.     The Group Health Insurance Plan at Issue**

As this Court has previously found, the Plan clearly and unambiguously allows for an appeal

where the beneficiary is "not satisfied with a benefit determination decision." [The Plan, at 34; dkt. 32-2 at 39]. The Plan provides for a "First Level Mandatory Appeal," where "Medical Mutual offers all members a first level mandatory appeal." *Id*. "Under the appeal process, there will be a full and fair review of the claim." The Plan continues to state:

> The internal appeal process is a review of your appeal by an Appeals Coordinator, a Physician consultant and/or other licensed health care professional. The appeal will take into account all comments, documents, records and other information submitted by you and the Provider relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination. All determinations of Medical Necessity that are based, in whole or in part, on a medical judgment are made by health care professionals who have the appropriate training and experience in the field of medicine involved in the medical judgment. The health care professionals who review the appeal will not have made any prior decisions about your care and will not be a subordinate or the professional who made the initial determination on your claim.
> You may submit written comments, documents, records and other information relating to the claim being appealed. Upon written request, you may have reasonable access to and copies of documents, records and other information used to make the decision on your claim for benefits that you are appealing.

[dkt. 32-2, at 39].

The Plan provides that a request to appeal may be made either in writing or by calling customer service within a specified period of time. *Id*. It is uncontested that Lanci fulfilled those requirements.

As this Court has already held, "nothing in the Plan conditions Lanci's appellate rights on the continuing need for the procedure." [This Court's Memorandum and Order, dkt. 19, at 12].

### C. Lanci's Rights under ERISA

Lanci seeks to recover benefits under 29 U.S.C. § 1132(a)(1)(B) pursuant to the terms of the Plan or to enforce the right to benefits under the Plan, *i.e.*, the right to an appeal following a denial of coverage, and the right to information related to the denial of coverage determination.

Section 1132(a)(1)(B) provides:

> A civil action may be brought--
> (1) by a participant or beneficiary--
> . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan

29 U.S.C. § 1132(a)(1)(B).

Lanci also seeks relief pursuant to 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) provides:

> A civil action may be brought--
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a)(3).

Lanci alleges that MMO failed to adhere to the terms of the Plan in response to his request for an appeal of its coverage determination and his request for information related to that determination. As this Court has previously held, the benefits Lanci seeks to recover are his right to appeal the coverage determination and to receive information related to that determination. This is not a request for restitution or for mandamus relief, but it fairly encompasses a request for injunctive relief to compel MMO to respond to Lanci's request for appeal of the coverage determination and to share information related to that determination.

### D. No Genuine Issue of Material Fact

The factual record in this case is clear and well developed. The material facts are few, simple, and uncontested. Indeed, all the questions presented by Lanci and MMO are questions of law for this Court to decide.

As a matter of law, Lanci is entitled to an appeal of MMO's denial of coverage decision pursuant to the Plan and 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3): Lanci has a right to a "First Level Mandatory Appeal"; MMO denied Lanci the right to the appeal; and ERISA requires that insurers adhere to their obligations under group medical plans.

MMO asserts two reasons why it believes it should not be required to undertake an appeal.

First, MMO argues that its decision not to process the appeal under the circumstances is entitled to deference and that, under the "arbitrary and capricious" standard of review, this Court should defer to MMO's decision not to provide Lanci with documentation relating to his denial of coverage and not to process his appeal, or even explain why it chose not do so. To get here, MMO asserts that this Court should conclude that there is an ambiguity in the Plan which MMO had discretion to resolve. Specifically, MMO asserts that the Plan is ambiguous with respect to a beneficiary's appellate rights because it does not address what is to occur "when the service that is originally requested is no longer needed at the time the appeal is filed."[4] [dkt. 33, at 10]. This argument merits little discussion. The Plan unambiguously requires MMO to perform a "First Level Mandatory Appeal" at Lanci's request. While it is perhaps ture that the need for a procedure for which coverage is requested is a factor MMO could consider <u>when processing an appeal</u>, there is nothing ambiguous about its obligation to undertake that process. Indeed, this Court said as much in response to MMO's Motion to Dismiss.

Second, MMO argues that it need not process the appeal for Lanci now because it would be a "vain act," which it says "the law does not require." *Id*. at 16. MMO bears the burden of establishing that the act would be entirely vain. *See Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007) ("the burden

---

[4] Notably, MMO did not deny Lanci the right to appeal on this stated ground and has never before taken the position that the right to appeal under the Plan was conditioned on MMO's assessment of whether the procedure for which coverage was requested was still necessary.

of establishing mootness is on the party advocating its application. . . . [W]ithout affirmatively demonstrating that the [plaintiffs] have no recourse under . . . [the] law . . . mootness is not established").

Lanci has presented at least some evidence that there would be value to him both in terms of possible future management of his condition and for purposes of his ability to understand MMO's basis for classifying the procedure as either experimental or unnecessary [dkt. 37, at 10].  Given the unequivocal nature of the right to appeal in the Plan, the Court can not find that enforcing that right would serve no purpose for Lanci.  Accordingly, the Court can not find that MMO has established that the appeal would be a "vain act."  For these reasons, Lanci's Motion for Summary Judgment must be **GRANTED** and MMO's Motion for Judgment on the Administrative Record **DENIED.**

### III. ATTORNEY'S FEES

Lanci's ERISA claims are pursuant to 29 U.S.C. § 1132, which also provides for reasonable attorney's fees: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

The Sixth Circuit has instructed district courts to consider the following five factors when exercising its discretion to award attorney's fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec. of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

"The *King* factors are not statutory, of course, and need not be parsed as though they were. The

factors simply summarize considerations that have sometimes been deemed significant in other cases-and, as the district court correctly noted in the case at bar, these considerations represent a flexible approach; none of them is necessarily dispositive." *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 937 (6th Cir. 1996) (internal quotation omitted).

### A. The Five *King* Factors

For the reasons that follow, the Court finds that the five *King* factors augur in favor of an award of attorney's fees to Lanci.

#### 1. MMO's Culpability or Bad Faith

Lanci argues that MMO acted with culpability or bad faith when it refused to perform the appeal as required by the Plan. MMO argues that there is no evidence that it acted with culpability or in bad faith because Lanci's heart attack rendered the appeal "irrelevant." [dkt. 34, at 7].

Lanci has successfully shown that MMO failed to perform the appeal as required by the Plan. This Court recognizes, however, that "the necessary degree of culpability is not established by the fact that a defendant has been found liable." *Gard v. Blankenburg*, 33 Fed.Appx. 722, 732 (6th Cir. 2002). Thus, "it is not the Court's finding of liability that prompts the Court to find that this factor weighs in favor" of Lanci. *Smith v. Columbia Gass of Ohio Group Medical Benefit Plan*, 2010 WL 319953 (S.D. Ohio 2010).

The Court finds that MMO acted with culpability by <u>repeatedly</u> refusing to conduct an appeal when one so clearly was required by the unambiguous language of the Plan. MMO simply had to conduct the appeal, and its steadfast refusal tilts this factor in favor of Lanci.

#### 2. MMO's Ability to Satisfy an Award of Attorney's Fees

Lanci is an individual claimant and MMO is a large not-for-profit entity. MMO does not dispute

-11-

its ability to pay the attorney's fees. Instead, it argues that

> As a not-for-profit entity, Medical Mutual's debt obligations are funded through premiums paid by its insureds. Thus, increased expenses, such as paying Plaintiff's attorney's fees, do not cut into Medical Mutual's 'profits;' rather, they are necessarily shifted to the insureds that pay premiums.

[dkt. 34, at 8.]

A similar argument was made in *Klein v. Central States, Southeast and Southwest Areas Health and Welfare Plan*, 621 F.Supp.2d 537, 543 (N.D. Ohio 2009) (where "Central States urges this court to weight its status as a not-for-profit trust in its favor because awarding fees will reduce the corpus of the trust in injure other participants rather than cut into profit."). The court in *Klein* held that "[w]here the opposing party is an individual claimant, as Klein is here, this analysis does not apply because even a non-profit trust is better situated to pay costs and fees than a plaintiff." *Id*.

MMO's argument, like the argument in *Klein*, is without merit. But MMO's argument in this case is especially disingenuous because it decided to maintain this lawsuit long after it made practical, financial, or legal sense to do so. MMO's attempt to hide behind its not-for-profit status after expending far more resources in litigating than it would have in conducting the appeal is not well taken.

### 3. Deterrent Effect of an Award

MMO cites to *Foltice v. Guardsman Products, Inc*. 98 F.3d 933, 937 (6th Cir. 1996) for the proposition that "the deterrent effect of a fee award on other plan administrators . . . is one that is likely to have more significance in a case where the defendant is highly culpable . . .". MMO then argues that "the Administrative Record in this case shows that Medical Mutual was attempting to honor its obligations" to Lanci, but that it "was presented with a very unique situation when it received a request for an appeal of a coverage decision for a Procedure that was no longer necessary." [dkt. 34, at 9-10].

Further, MMO argues that it "is also reasonable that Medical Mutual would choose not to expend resources on processing an appeal that would not result in any meaningful relief for Plaintiff." *Id*.

MMO's reasoning has already been addressed by this Court: the plain language of the Plan clearly indicates that Lanci had a right to an appeal. Further, for MMO to claim that it did not undertake the appeal because of its concern about expending resources to do so rings hollow. MMO was more than willing to expend exponentially more resources litigating this matter, and to do so well past the point of reasonableness, than simply performing the appeal as required.

Accordingly, this factor also tips in favor of Lanci.

### 4. Whether Lanci Sought to Confer a Common Benefit on All Participants and Beneficiaries of an ERISA Plan or Resolve Significant Legal Questions Regarding ERISA

Lanci argues that this litigation will inure to the benefit of other participants; MMO argues that it will not. The Court finds that, regardless of any benefit that may flow to others who seek coverage for the same medical treatment, all Plan participants will benefit from an unequivocal determination that MMO must provide participants with their "mandatory" right to an appeal, regardless of MMO's view of the wisdom of such an appeal. This factor also tips in Lanci's favor.

### 5. The Parties' Position on the Merits

MMO, in its Supplement to its Opposition to Plaintiff's Request for Attorney's Fees Due to a Change in Intervening/Controlling Law [dkt. 41], cites to a recent Supreme Court decision in *Hardt v. Reliance Standard Life Insurance Co.*, Slip Op. 09-448, 560 U.S. ___ (May 24, 2010). The *Hardt* decision requires that the party to whom fees are awarded pursuant to 29 U.S.C. § 1132(g)(1) must have achieved some degree of success on the merits." *Id*. This language, however, if anything, broadens the scope of cases in which attorney's fees may be awarded under § 1132(g)(1) from the "prevailing party"

to the party who has "achieved some degree of success on the merits."

Here, Lanci is the prevailing party and he has clearly achieved some degree of success on the merits. This factor, and considering the new *Hardt* opinion, lean in favor of Lanci.

### B.     Award of Attorney's Fees and Costs

The Court has weighed and considered the five *King* factors, as directed by the Sixth Circuit and finds that an award of attorney's fees and costs is appropriate in this case.

Because Lanci would not have had to file this lawsuit absent MMO's steadfast refusal to conduct the "mandatory" appeal clearly described in the Plan, the Court will award fees for the entirety of this litigation. Lanci's claims for compensatory damages, however, were not viable and because MMO had to defend against them, attorney's fees for that stage of the litigation[5] will be reduced by half. Attorney's fees will be awarded in full for the litigation from the date after this Court's ruling on MMO's Motion to Dismiss[6] until the date of this order.

Lanci has until October 29, 2010 to file his petition for attorney's fees and costs, including the necessary affidavits and lodestar rates.

### IV.   CONCLUSION

This case appears to have been fought on principle. The benefits Lanci receives from this litigation are not monetary. While MMO argues that an appeal would be a "vain act," it could have easily undertaken the appeal years ago, at considerably less time and expense, and avoided the similarly vain defense of most of this litigation. This Court has difficulty fully understanding the strength of the

---

[5] From the date of removal to this Court (June 30, 2008) until this Court's order on MMO's Motion to Dismiss (March 25, 2009).

[6] March 26, 2009.

parties' motivations, and their tenacity, but nonetheless, must it resolve their dispute.

Accordingly, and for the above reasons, the Court **GRANTS** Lanci's Motion for Summary Judgment and **DENIES** MMO's Motion for the same. The Court **ORDERS** MMO to perform the appeal as required under the Plan and ERISA.

Finally, Lanci shall **FILE** a petition with this Court for reasonable attorneys fees, including necessary affidavits and lodestar rates, by October 29, 2010.

IT IS SO ORDERED.

                                                /s/ *Kathleen M. O'Malley*
                                                KATHLEEN M. O'MALLEY
                                                UNITED STATES DISTRICT JUDGE

Dated: September 30, 2010